Good morning, Your Honors. Richard Antonini on behalf of Barry Halajian, the Appellant, and I'd like to reserve three minutes for a couple of my matters. I guess I will start out here for a closer morning as you put it, Judge Prasad. It's a harsh morning. I had a harsh morning. I stand here in a peculiar position in having written the Priestman's case about syllables from law come for a change. He knows how to be friendly. People know how to be friendly. He calls cheap enough cases. You've read Ivanova, of course, and then the Sirota case? Yes. Sirota v. US Bank? Okay. This is essentially a Sirota v. US Bank case, a little bit different, but the same theory holds. Under California laws established in Ivanova, you, as a borrower, do have standing to a secure loan foreclosure. This would be based on the allegation that a purported assignment of your debtor's trust was void. Sirota holds that the entity, if an assignment of a debtor's trust is done when there is no assets or loan to assign, that is void per se. What we have here is a situation where the original loan was issued in this situation by an entity called Fremont Investment & Loan in 2005. In 2008, I think this is more of my disputes, in August 2008, Fremont Investment & Loan goes out of business. It doesn't go out of business. It goes out of business as a bank, but it doesn't dissolve. Well, it's unclear what it went through. It's unclear what it does. It renders its license to the California Department of Financial Affairs and conducts a number of banking visits. It's a little unclear what happens to it. It continues to defend cases, supposedly, but we don't know what it does beyond that. I think the problem here is that MERS, you have to be attacked by the whole MERS structure as well, because MERS has the authority to act on behalf of agents of science anyway. MERS has the authority to act as a transferring agent. It does not hold the interests of both under its own right, per se. So, if Fremont Investment & Loan were still around in 2010 when the assignment was done, late June, then that might be a proper assignment. Fremont could not acquire Fremont. I'm not sure why it did, in retrospect. All we know is it renders its license. It goes out of business. Was it acquired? Was it dissolved? No one knows. But that brings up another point. The defendants, particularly Deutsche Bank, acting for the trust, had the burden of proof. To prove, they had a bailout of some amendments under California, the Cockrell case, and since they were moving for summary judgment, they had to meet that. Is that true in the wrongful foreclosure action? Excuse me? Is that true in the wrongful foreclosure action? Why is it the burden of the plaintiff's notices? Because what the plaintiff has to prove is a broken title or a void assignment. The other side of that has to prove that they have a clear or a broken chain of title and a valid assignment. So what you would have to prove is that Merz did not have the authority as an agent to cite the duties he would have did. And you have to prove that. Well, we put in evidence that Fremont no longer did not exist as a legal entity. You didn't put in evidence that Fremont didn't exist. You put in evidence that it wasn't a banking entity anymore. Right. Even so, I think under the Cockrell case, they would have to establish, they would have to prove they were the proper assignee of the loan. And they would have to establish that the loan went from Fremont to some other entity, to some other assigned or successor of Fremont so that Merz could assign it. I don't think Merz himself could hold the deed of trust or title of deed of trust. I think that's his ability, the power only to transfer on behalf of his principal. If the principal is also a question for us, I think I apologize to my colleagues, but your client borrowed money from a lender, a key lender, whatever happened, and that loan was not in existence. At that point, doesn't your client still owe money to somebody? Yes. Is your client making payments to somebody? No. You know, he owes money to someone, but he doesn't owe money to the world, even though the case is not enough to say for a bank or a lender to come in and say, he owes money to somebody. The bank has to come in and say, he owes money to us, and he has to try to understand that there is going to be a dispute among the roles you're trying to connect with. This right here is on your client. And if that was there all the time, is your client owed money? No. That wasn't there either. Yes. That's a good point. So, yeah. Counselor? Counselor? Yes. Yes. It looked like it. I'm fumbled by it. I think maybe you're right, just for discussion as well. I mean, if Mr. Olaykin received an amount of money and a large amount was still unpaid, how can the judicial result be, it's like money for nothing and a house for free, you know, that one of these entities can't recover against? An entity can recover against it if the entity can prove that it has a proper assignment of a loan. That's the E-Unova case. This argument, this point you bring up, the judge was dealt with, and the E-Unova case where the Supreme Court said it is not enough to say that he owes money to somebody, that somebody has to come forward and prove they own the loan and they have the right to foreclose. That's what the E-Unova case, that's what the E-Unova says quite clearly. I have two questions. Between this case and Sfiorata, and also I think Lemke, which is the district court case, which was found to avoid transaction, is that in those instances, as I understood it, what happened was the component was Solse first, and then later, or a scientist, I think America, for example, and then five years later, all of a sudden it's being assigned to somebody else, and if it was already being held by the Bank of America, it couldn't be assigned to somebody else, because somebody else, the person assigning it didn't have it. Now, you're not explaining that. I mean, in other words, you don't have somebody else here. You simply have this supposition that MERS couldn't have been added for Fremont because Fremont was no longer a bank. That's essentially MERS couldn't have for Fremont because Fremont, not that it was dissolved, but it was no longer a place to just bank, so it must be that they couldn't have for it, and this thing just went off in the sky, not to somebody. It is different from a Sfiorata case, I think, and since we don't have any two assignments, and so far it's one assignment, so I have Sfiorata, and I think it does show a pretty good title, and the problem is we don't know what happened to Fremont. Because that's the problem. So why isn't that your burden? So then isn't everything here in charge of the burden of proof, and you're at the blame? It turns into the burden of proof in a sense, but under California law, it's established in the Pompeo case, and it has, as was said in the Ivanova case, the burden of proof initially is on the entity claiming their own law and who actually approves that. In California, when you claim to have... Excuse me? Yes. Even on a Sfiorata, or both forms of foreclosure cases. Right. In California, the burden of proof has always been on the party claiming the title of a contract under an assignment to prove the validity of the assignment. And it would have been, I think, simple for them to come forward with proof that Fremont... First of all, what happened to Fremont? It was open for what happened to Fremont from the defense. Second, it could have proven that Fremont sold its assets, including this home, to somebody else, and that if somebody else was a successor of the Air Force, it could have signed the deed of trust. I mean, I see that, for example, in Washington Beach, one of the cases in Washington Beach that went under, and it was a contract between the FDIC and Chase, a transfer deal to Washington Beach for Mr. Chase, and by using that document, Chase could show it had a broken sheet of the title. Well, that's not what happened here. We haven't had any indication. We always... I'm sure it was on your asking what happened in Fremont. We don't know what happened in Fremont. They presented no evidence to contradict our contention that Fremont had some records and spices, as of August 2008. They presented no evidence of what happened to Fremont or its assets. It would have been relatively simple to do. So that's really what... It really does come down to what happened to Fremont and that gap in the settlement. Okay. Adam, did you have to say something? I mean, keep going if you want, or I'll sit down. Please. Thank you very much. So I'm not coming up on your remarks, are I? Thank you. Good morning. And may it please the Court, Joseph Hoffman on behalf of Abilene J.B. Morgan, Chase Bank, and A. Kamali Eldon is counsel for George Bacon's trustee is present and has ceded her time, so I may argue. And I will conclude a few moments early as necessary so that Whitney could make her own view on behalf of his client. I think there's a few issues that were just discussed that need to be addressed first. This Skirata case was not cited in the briefs and submitted in the support by all authorities. Over the year, a bunch of these cases we have, these people think it was sweet, so let's do this. We have it. I get it. I might just be prepared to come and argue that case today. All I know about that case is it involved very unusual facts involving multiple assignments. There was a second one like that, which was the Lundy District Court case. Okay. All right. Well, my point is it hasn't been brought up prior to oral argument. Second, this discussion of Coquerel and the notion that the burden relies on the rest of the defendants establishing complete change of title is a misstatement of California law. It's well established that the party attacking a nonjudicial foreclosure sale bears the burden of showing the sale was illegal, oppressive, or fraudulent. We've cited Melendrez, Knapp, DePruner, Gomes, Haynes, all support that very fundamental proposition. I wonder if there are case law on the specific question of who has the burden with regard to seasonal change of title. I mean, it would make logical sense that it should be done. Like, because how are they supposed to know? I don't know what the case law is. I don't think it would make – I disagree with you that it would make logical sense. And I think there is a lot of cases, too, I think that are most important for purposes of this argument on this issue and the entire – all of this argument raised by a comment. The recent cases in Hoody v. Impact Funding and Satterbach v. J.P. Morgan, they raised the same arguments in this case. Mr. Antichini was counseled in both of those cases, and both courts rejected all of the arguments he's raising here today. They also deal with Fremont? I'm sorry? They also deal with Fremont? Of course, I just pitted that question. They did not deal with Fremont. But, as I'll explain, the defunct lender theory is irrelevant and immaterial because, first, the foreclosing entity, as a defendant, does not bear the burden of establishing a complete chance of trial. So – What else? Okay. That's why – that's why these defunct lender issues – well, what else about the defunct lender? In this case, the record – I mean, what is the status? What is the role of Burris in all of this? I mean, Burris is the agent who was head for any successors as well as for Fremont. Right. Right? We don't know if there were any successors. If there were successors, then Burris wasn't acting as a successor or what? Did Burris say who was acting on behalf of him? He did. Did Burris say who was acting on behalf of what it assigned to urgent society? It was acting on behalf of George Magnus V. But did it say – So there's some inference that there was an assignment to Deutsche Bank, and that's why Burris could act, essentially. Yes, absolutely, and I think the record confirms that. It confirms what? It confirms that Deutsche Bank received a loan, and Burris was acting on its behalf. But we don't know if that was a loan or what. Well, I would put the court to Paragraph 31 of the complaint. It states, The original lender sold Plains Promissory Note to the GSAMP 2005-HE4 Trust. The note was transferred and securitized into the trust. We've argued that's a judicial admission, showing that, in fact, the note was transferred to the trust. Under UNOVA, the deed of trust follows the note, so that's it. And the issue, they don't admit when it was transferred, but that issue is immaterial under SADRAC and UDI Mendoza because, as we know, an election on time and loan assignment to a loan trust is not void under New York or California law. It is merely voidable because the beneficiaries of the trust can ratify. Actually, it doesn't comply with the terms of PSA. So I think, and if you look at Judge Ishii's loans, he numerous times says that the beneficial interest was transferred to Deutsche Bank. He says that in footnote 1 on his MSJ order and H7 on his MSJ order as well. There's just some questions as to time. So, and I also don't think that the record shows anything about Fremont, quote-unquote, going out of existence whatsoever. Footnote 3 to the most dismissed order noted that Fremont was effectively attempting to enforce its rights as a creditor as recently as May 2, 2012. The only evidence that the plaintiff induces that Fremont, even if this were issued as immaterial, which I don't believe it is because we don't bear the burden of proof, but even if we did, the bulletin attached to the plaintiff's declaration referring to show that Fremont surrendered its license in July of 08 doesn't show anything about them being dissolved, and it doesn't show that they can't sign a loan. And it simply doesn't show that. Can you tell me, if you follow it up, that it doesn't matter because this was sold and it was assigned to the Securitized Trust, and then what? I don't understand the area. So then Fremont's out of the picture, is that what you're saying? Absolutely. And then what? The Deutsche Bank has the loan. He fails to pay on it. The Deutsche Bank? Is the Deutsche Bank a trustee that's secured for the security bulldozers? Yes. But the speech seems to be, how did that trust get it? How did that go? Well. When did it get it? As I mentioned, I'm going to go out and ask my brother-in-law. How did they get it? I identified the judicial admission here, paragraph 38, plus the additional admission. But the judicial admission is who got it, not how it got it. Why would how they got it matter? Well, I mean, it does alter the birth and currency, right? That's where it turns. But if you had a burden, then the question of how it got it would matter. Right. Okay. Let's talk on the burden issue once again, because I haven't finished what I'd like to say about that. He's talking about Cockrell as being evidence that the defendants bear the burden. Now, that is an issue, an argument he raised in UD, and then he raised in Satterbeck. Both, of course, consider it and reject it. Because in Cockrell and Never Student Society, which is the other case he said, it was the plaintiff who had sued. So the plaintiff bore the burden of proof. Cockrell did not involve a nontraditional foreclosure. It didn't involve a claim for wrongful foreclosure, or it didn't involve an attack on a foreclosure settlement. It was a claim, a case involving claims to interpolate funds to the claimants. Those of them that their claim was based on assignment bore the burden of proof to show the validity of their assignment under common law principles. But as Uddi and Satterbeck rejected the same argument, because defendants have sued no one. As defendants, they do not bear the burden of proof. And I'll also point out that Satterbeck cited Fontenot, which has a very appropriate discussion of this. It also discusses the fact that we're dealing with a nontraditional foreclosure under California's civil code, which is comprehensive, and it doesn't require the foreclosure agency to induce evidence of its authority to foreclose. And further to that, Fontenot has not been, or that it remains, valid precedent after Emanoa, because Emanoa did not disprove of Fontenot on that point. And then some more things about this. So in conclusion there, we don't bear the burden of proof. It's rather clear under Uddi and Satterbeck. And some more points about this, about whatever evidence there was about Fremont. Like I said, the bulletin just shows they surrendered their license. It doesn't show that they couldn't sign on, that they owned, or any other asset. It doesn't show that any assignment would be void. That's the standard under Uddo. So you have to distinguish between a void assignment. And the only other evidence identified is this internet printout article. And this actually confirms that Fremont did not go out of existence. This is Exhibit A to the plaintiff's declaration, which obviously is lacking in evidentiary foundation. But this internet printout, even if you credit it, indicates that Fremont, quote, quote, will continue as a California corporation and will be changing its name to Fremont Reorganizing Corp. So there's no evidence that Fremont, quote, were not in existence whatsoever. And there's nothing in that printout that refers to Fremont at all. So I think that the evidence there is just insufficient, particularly in light of their admissions. People want them to know it was transferred to the trust and securitized under the trust. Further, I think the lower court's decision is correct in an issue. But in the citation of the Zillow case and other cases, they have rejected this defunct original under theory because the merged unit of trust provides it is certainly conceivable that you could have a defunct original under, and we just lost track of all these pieces of paper in the moment. And somebody just shows up from the courts to have inherited them all somehow and starts transferring them around. I mean, it's not an impossible situation. And that's why everything ends up turning on the burden of proof. In other words, I assume that if Fremont and Stafford had an existence, and if four years later merged transfers loaned into this trust, and they could demonstrate that there really was a four-year gap between anybody ever having any assertive ownership interest, they might have something. And I don't know why that's different than the dual owner. I mean, the fact is, suppose they went bankrupt, and all their property was given to the creditors, and now somebody else is purporting, who's not the right creditors, is purporting to enforce this. OK. I assume at that point there would be a gap similar to the dual. So I ask for a situation. Why would that be? I mean, if they went into bankruptcy, they still could have signed the loan. But say that somehow through a reorganization, and they still own the loan in 09, which is not consistent with the record as it exists. But it's a sitting that could still be fined. And then they came up with a deal that through bankruptcy. I mean, why is that consistent with the record? Because the record shows the loan, the note was transferred to the trust. What? Well, we don't know what. Because it's material. Well, it's material. If it matters whether it was before or after 09, I don't know if it does matter. But if it matters, then it's material. Did you note it in 09? We don't know whether they owned it in 09, because we don't know when it was transferred to the trust. I'm saying to establish a void of loan assignment under UNOVA is outstanding. In the cases that have set forth, you have established that assignment was void. I don't see why any of this discussion would establish a void assignment. That's the problem. And any successor to the loan. Well, the assignment for somebody who didn't own it because it didn't exist could be void. Didn't it? It didn't own the loan because it didn't exist. Well, there's no evidence if anyone didn't exist. Well, I know. I just thought hypotheticals at this point, right? I'm saying it's not a stupid theory if a hypothetical didn't exist. Well, there is no authority in supporting Ellen's position on this whatsoever. Sorry. There's no authority that says if a bank goes into bankruptcy or surrenders its license that the loan becomes a novelty or that it can no longer be signed. I mean, it's really an absurd position to even try to understand. I did want to provide some time for Mr. Weiss to say. So the only thing I'll say is you would instead are backed off of our direct funding plan. I know you said my plan. Say what you want to say very quickly. Thank you, Your Honor. May it please the Court. Jonathan Weiss for the Whitney Court. And I just want to make three quick points with respect to the allegations directed against my client specifically that she allegedly robo-signed foreclosure documents. I wanted to articulate why those allegations fail as a matter of law at that threshold. Number one, the borrower in this case lacks standing to make these allegations of robo-signing as a basis for voiding the assignment for the same reasons that the borrower lacked standing to allege that a post-closing transfer has been addressed. Wait, so you're saying that he's not violated in this way at all? Exactly. There's subject to ratification in this court. That's what you're saying? I'm sure you're not saying that. Partly. The parsee recognized that. That's the first point. But the second point is, and it goes to your question about the murders existing judge bears on, is that this court recognized in this Galante's decision that it's just a function of the MERS structure, where you have this consortium of members, member banks, and mortgage lenders, that you're naturally going to have a situation where employees of the member banks are going to be authorized by MERS to sign on behalf of MERS. And so the robo-signing claim is associated with signing this definition? Well, no. The robo-signing claim, in this case, the factual predicate for that claim is that Ms. Cook wore too many hats. She had a dual cast. She had a few cases, too. I know. That's right. And then the third point is connected to that second point, which is that the cases after a different court issued its decision on the motion of dismissal, allowing the robo-signing allegations to survive to the summary judgment stage, have all come down following Cervantes. And the help that the mere allegation of robo-signing, and that's all you have when you strip away the dual capacity argument. The mere allegation, and Ms. Cook has said, no robo-signer is simply insufficient to support a claim at the pleading stage. So I would say for those three reasons, I would respectfully submit that the robo-signing allegations don't survive the pleading stage. And you don't even need to get to summary judgment. Sir? Thank you, Your Honor. For three simple points. First, the district court, I think, found correctly that the issue could not include exactly one law that was transferred, if it ever was. Frankly, I would say right now, it's in your House of Appellate. You can say that. But then you, who died, and several other cases are quite clear enough to say that the verdict is not a U.S. claim to the European disclosure. The verdict, the burden. It's as clear as they can be. The burden is on us to show, I think, at least initially, a break in title, which I think we've shown by raising questions as to Fremont. Beyond that, I think under Cockrell, the burden shifts to them to show a clear chain of title, which they haven't done. What they have done is speculate. Even though it says that Cockrell is not a relevant case. Here, however, Deutsche Bank says, who'd I use the plaintiff's challenge if he could not use the conclusion of disclosure as the burden to come from lawful? I don't think, and I think we've been at burden, Your Honor, by at least bringing up the fact that the orderly disputes is that Fremont surrenders its license to do business in relation to loans as of August 2008, which suggests that, well, something happened, but no one really knows. Counsel, why does surrendering your ability to make loans mean that you can't make an assignment on some loan you already have? It doesn't, Your Honor. It doesn't necessarily mean that, but again, we're engaging in speculation at this point, not evidence. We're trying to guess what happened. And that's why you would disclose to make sure it's burden-approved. I don't think we have the burden-approved. At least not the ultimate burden-approved. Your Honor, these two California Court of Appeals cases were wrong as a matter of California law, and the California Supreme Court would rule otherwise.  Well, the Cockrell case, I think, says they, as the S&E, have the burden of proof of approving the assignment. Even Elvis says they have to show that they have the right to foreclose because the L&L donors have the power to foreclose them. The power to foreclose, I think. And I might add that when it comes to burden of proof, it's often allocated as part of your access to documents on this particular issue. The issue here is chain of title. And obviously, this great chain of title has access to the documents that show the chain of title. Presumably, Deutsche Bank, which needs to show it also, has access to the documents that show it has the right to enforce the law. Last point, Your Honor, on when was the same transfer? I mean, I've heard some talk of this transfer to the trust in 2005. I would point out that when they moved to summary judgment, Deutsche Bank submitted a declaration from someone in Occoquan Homes. This is a paralegal, I gather, who testified in their declaration. They didn't acquire title to the loan until the assignment in 2010. And the judge, as Judge Ishii found out, he could know no party had really proven when the loan was transferred. OK. Your time is up. Thank you very much, Judge Kramer. Thank both of you for your participation in the details of California foreclosure law and how a legitimate person, Deutsche Bank, submitted it and went to court to acknowledge it. Thank you.
judges: Gould, Berzon, Garbis